# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| DEVIN HAZEL, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>JOHNSON & WALES UNIVERSITY,<br><br>      Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

    Plaintiff Devin Hazel ("Mr. Hazel"), on behalf of himself and all others similarly situated, hereby brings this Class Action Complaint against Defendant Johnson & Wales University ("JWU" or "Defendant"). Mr. Hazel makes the following allegations based upon actual knowledge as to his own acts, and upon information and belief, including the investigation of his attorneys, as to all other matters.

## NATURE OF THE ACTION

    1.    There is no question that classroom learning—and all of the experiences that come with on-campus education—is more valuable to the student than online learning. Students and their families pay—and borrow—hundreds of thousands of dollars for the on-campus college experience because it provides the students the opportunity to engage directly with their professors, to meet and share experiences with diverse and accomplished individuals from around the world, to join student clubs, to build professional networks, and to experience the campus environment. Online learning offers none of these opportunities—and carries few of the massive expenses associated with live classroom learning. For these reasons, some schools like JWU offer online degree programs at substantially reduced rates; and yet many students spend tens of thousands of dollars to attend private colleges and universities instead of enrolling in online college courses. In the spring of 2020, these choices were taken away from students at JWU.

    2.    In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that

causes the COVID-19 disease (the "COVID-19 pandemic"), JWU, like many other universities, moved all learning online for the remainder of the Spring 2020 Term.

3. As a result, all on-campus classes, including laboratory classes, were no longer available to JWU students.

4. Despite the harsh reality that students could no longer learn on campus, JWU required students to pay (and many to borrow) full tuition for the Spring 2020 Term, failing to take into account the diminution in value of the education the school is now offering compared to what students were promised.

5. Accordingly, the students have lost the benefits of the bargain for services and education they paid for but could no longer access or use.

6. While partial refunds for tuition will not replace the lost on-campus experience, they would provide Mr. Hazel and the putative class members with some financial relief, as many prepare to graduate into a depressed job market.

7. While the circumstances underlying this legal action are unfortunate and unprecedented, the students did not choose these circumstances, and they certainly did not agree to pay tuition when learning remotely without the use and benefit of on-campus facilities and experiences, for which they paid handsomely.

8. It is, therefore, unfair and unlawful for JWU to retain tuition for services not being provided and to pass the losses on to the students and their families.

9. Accordingly, JWU has improperly retained monies paid by Mr. Hazel and the other putative class members for the reduced value of tuition for online classes, while not providing Mr. Hazel and the other punitive class members the benefits for which they paid. JWU's retention of these funds is unlawful and unfair.

10. Mr. Hazel brings this class action for damages, restitution, and declaratory relief resulting from JWU's retention of the full tuition paid by Mr. Hazel and the other putative class members for services not being provided. Specifically, this lawsuit seeks a partial tuition reimbursement to compensate for the diminished value of remote instruction along with the portion

of the tuition that funds on-campus services, facilities, and extra-curricular activities that ceased when JWU closed the campus.

## PARTIES

11. Mr. Hazel is a New York citizen, residing in Rome, New York. He is in his third year at JWU, pursuing a Bachelor of Science degree in Culinary Arts and Food Service Management, which is part of JWU's College of Hospitality Management. He took out student loans that were used to pay JWU for his tuition, including for the Spring 2020 Term.

12. Mr. Hazel enrolled at JWU for the "Spring 2020 Term," which was scheduled to run from March 9, 2020 through May 22, 2020.

13. JWU is a Rhode Island corporation with its principal place of business located in Providence, Rhode Island.

14. JWU has four campuses: Providence, Rhode Island; North Miami, Florida; Denver, Colorado; and Charlotte, North Carolina.

15. JWU also has a College of Online Education.

16. Mr. Hazel is a student enrolled at JWU's North Miami, Florida campus.

## JURISDICTION AND VENUE

17. The Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and is a class action in which Mr. Hazel and one or more of the other class members are citizens of a state different from the Defendant. Namely, Mr. Hazel is a citizen of New York, and Defendant is citizen of Rhode Island.

18. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with this district, *i.e.*, it operates a campus in Miami-Dade County, Florida.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within this district.

**FACTUAL ALLEGATIONS**

**I.    The On-Campus Education**

20. Students enrolling in JWU's on-campus programs do so because it enhances and contributes to the overall educational experience—and it comes with a significant cost embedded in the price of tuition. Students choosing an on-campus learning environment pay for the opportunity to have in-person classes featuring direct interaction with faculty and on-campus amenities and activities, including the dining hall, library, gym, pool, sporting events, and other extra-curricular activities.

21. JWU emphasizes the fact that it "was one of the first universities to build a curriculum around hands-on learning. Known as 'experiential education,' it's the pinnacle of the JWU experience."[1]

22. For example, with regard to JWU's globally recognized Culinary Arts program, JWU promises:

> Through our bachelor's degree program in Culinary Arts, you'll learn the craft of culinary arts in top-notch labs under guidance of expert chef-instructors.
>
> You'll focus on the fundamentals of food preparation before delving deeper into each technical area, mastering the disciplines in specialized industry production environments such as garde manger, hot labs, pastry and bakeshops, and wine and beverage labs.
>
> You'll also learn the business side of the industry, from financial to human resource management to leadership skills. When you graduate, you'll be prepared to become a top chef — one who can lead in a variety of real-life production environments anywhere in the world.[2]

23. JWU further emphasizes that in addition to participating in the Culinary Arts program, students "can take full advantage of the full university experience, which includes

---

[1] Johnson & Wales University Undergraduate Viewbook, https://www.jwu.edu/viewbook/undergraduate-viewbook.html, at p. 2 (last accessed May 28, 2020).
[2] https://www.jwu.edu/academics/majors-and-programs/culinary-arts-bs.html (last accessed May 27, 2020).

student-run clubs, athletics, world-class speakers and more."[3]

24. JWU also advises:

Culinary laboratory classes offered throughout the program provide students with an opportunity to continuously develop their craft, and to develop confidence and coordination working within a professional kitchen. Credentialed faculty share their professional expertise within state-of-the-art culinary laboratories, providing an educational environment that promotes student learning and assists students in achieving their place within the culinary profession.

Professional competencies, presented in the academic classroom and practiced in upper-level laboratory class settings, include financial and human resource management, food safety, self-discipline, effective communication and other attributes necessary to effectively lead teams within food service organizations.

…

One of the highlights of the Culinary Arts bachelor's degree program is the requirement to participate in an advanced industry experience within diverse, domestic or international food service operations. Students work alongside an industry professional in a food service operation, while guided by a university faculty member, allowing students to continue to develop their craft and practice professional competencies.

25. Mr. Hazel and similarly situated students did not pay for online courses in a remote learning environment. They paid for face-to-face courses, including in-person lectures, labs, and other hands-on learning experiences.

26. This is true for the numerous degree programs that JWU offers, including Business, Arts & Sciences, Engineering & Design, and Health and Wellness.

27. Several studies have shown that online learning is not as effective as traditional, in-person instruction. For example, a study from the Community College Research Center which compared online and face-to-face course outcomes found that "failure and withdrawal rates were significantly higher for online courses than for face-to-face courses."[4] Those that completed the

---

[3] *Id.*
[4] Community College Research Center, *What We Know About Online Course Outcomes*, Research Overview 2 (April 2013), https://ccrc.tc.columbia.edu/media/k2/attachments/what-we-know-about-online-course-outcomes.pdf.

online courses received poorer grades than students who attended in person.[5] The study concluded that "online courses may exacerbate already persistent achievement gaps between student subgroups."[6] Another study that compared outcomes for students in California community colleges also concluded that "in the short term, course by course, student outcomes are worse in online courses than in traditional courses."[7]

28. Faculty, academic leaders, employers, and the public remain skeptical about the value of online education.[8] In 2013, a Gallup poll found that "Americans' overall assessment of internet-based college programs is tepid at best." The majority of Americans found internet-based college programs as "only fair" or "poor."[9]

29. In ten national surveys of chief academic officers by the Babson Survey Research Group during the 2002-2015 period, no more than a third reported that their faculty "accept the value and legitimacy of online education."[10] In a 2012 survey of over 4,500 faculty, two thirds reported that learning outcomes for online courses are "inferior or somewhat inferior" when compared to face-to-face courses; with only 6% reporting outcomes for online instruction as "superior or somewhat superior."[11]

30. The Chronicle of Higher Education has also found that online colleges ranked last in terms of "employer desirability of college type"; indeed, online programs were the only type of

---

[5] *Id.* at 3. Adding controls for student socioeconomic and educational characteristics increased the negative outcomes associated with online learning. *See id.* at 4.
[6] *Id.* at 6.
[7] Hans Johnson and Marisol Cuellar Mejia, *Online Learning and Student Outcomes in California's Community Colleges*, Public Policy Institute of California 1 (May 2014), https://www.ppic.org/content/pubs/report/R_514HJR.pdf.
[8] I. Elaine Allen, *et al.*, *Online Report Card: Tracking Online Education in the United States*, Babson Survey Research Group & Quahog Research Group, LLC 9 (Feb. 2016), https://onlinelearningsurvey.com/reports/onlinereportcard.pdf.
[9] *See* Lydia Saad, *et al.*, *In U.S. Online Education Rates Best for Value and Opinions; Viewed as Weakest in Terms of Trusted Grading and Acceptance by Employers*, Gallup (Oct. 15, 2013), https://news.gallup.com/poll/165425/online-education-rated-best-value-options.apx.
[10] I. Elaine Allen, *et al., supra* note 10 at 6.
[11] I. Elaine Allen, *et al.*, *Conflicted: Faculty and Online Education, 2012*, Babson Survey Research Group & *Inside Higher Ed* (Feb. 2012), https://files.eric.ed.gov/fulltext/ED535214.pdf.

college found to be undesirable.[12] And a 2013 study found that over half of employers prefer "a job applicant with a traditional degree from an average school over an applicant with an online degree from a top university (just 17 percent say they'd prefer the latter)."[13] Thus, students who receive a significant portion of their instruction online, or earn their degrees from an online program, will have "limited labor market opportunities as long as these strong views persist among employers."[14]

31. It is thus no surprise that online educational programs, including the online degree programs offered by JWU are offered at substantially discounted prices relative to in-person instruction. At JWU in particular, tuition for the school's undergraduate online program is approximately 69% less per credit than its in-person undergraduate tuition.[15]

**II.     JWU Orders Campus to Close in Response to the COVID-19 Outbreak**

32. For the Spring 2020 Term, JWU charged Mr. Hazel tuition of $11,018.00.

33. Spring 2020 Term classes at JWU began on March 9, 2020 just like any other term, with Mr. Hazel attending his classes in-person and on campus. The Spring 2020 Term was scheduled to end on or about May 22, 2020.

34. However, only three days into the Spring 2020 Term, on March 12, 2020, JWU, apparently in alignment with the decision made by the Florida Board of Governors for the State University system, announced that starting Monday, March 16, 2020, JWU would move to online and remote instruction for its non-culinary lab academic classes. All culinary labs university-wide

---

[12] *The Role of Higher Education in Career Development: Employer Perceptions*, Chronicle of Higher Education (Dec. 2012), https://chronicle-assets.s3.amazonaws.com/5/items/biz/pdf/Employers%20Survey.pdf.
[13] Public Agenda, *Not Yet Sold: What Employers and Community College Students Think About Online Education* (Sept. 13, 2013), https://www.publicagenda.org/reports/not-yet-sold-what-employers-and-community-college-students-think-about-online-education/.
[14] *Id.*
[15] Tuition & Fees, JWU, available at https://web.archive.org/web/20190115201615/https://www.jwu.edu/admissions/paying-for-college/tuition-and-fees.html (last accessed May 29, 2020); https://catalog.jwu.edu/programsofstudy/food-innovation-technology/culinary-arts-bs/(last accessed May 28, 2020).

were initially cancelled for two weeks and then were to remain cancelled through *at least* July 6, 2020 (well after the conclusion of the Spring 2020 Term).[16]

35.  Thus, after only one week of the Spring 2020 Term, classes of all types were offered only online, if at all, with many labs unable to proceed and professors not lecturing students.

**III.  Despite Closure of Campus, Students Are Being Charged Full Cost for Tuition**

36.  Mr. Hazel and other class members paid tuition for on-campus, in-person instruction for the Spring 2020 Term. Yet, JWU has not refunded Mr. Hazel and class members the difference in cost between the in-person education they were promised and paid for and the online education they were provided, despite JWU's own recognition of the difference in value between the two given that it offers online degree programs at highly discounted rates.

37.  Instead, JWU apparently expects its students to shoulder the financial brunt of the COVID-19 pandemic alone, notwithstanding the fact that students are the worst positioned to be able to do so.

38.  Indeed, more than two thirds of students graduate college with student loan debt.[17] Student loan debt has ballooned to nearly $1.56 trillion dollars, with the average student loan debt for the class of 2018 at $29,200.[18]

39.  The average borrower must spend hundreds of dollars per month repaying student loans—averages range from $300 to nearly $600 across surveys—and many borrowers struggle to

---

[16] North Miami Coronavirus COVID-19 Update, available at https://covid.jwu.edu/nmi-news/north-miami-coronavirus-covid-19-update (last accessed May 28, 2020); North Miami Campus-Culinary Labs to Resume July 6, A Message from Bruce Ozga, M. Ed. '92, Dean Culinary Education, available at https://covid.jwu.edu/nmi-news/north-miami-campus-culinary-labs-to-resume-july-6 (last accessed May 29, 2020).
[17] Abigail Hess, *Here's how much the average student loan borrower owes when they graduate*, CNBC (May 20, 2019), https://www.cnbc.com/2019/05/20/how-much-the-average-student-loan-borrower-owes-when-they-graduate.html.
[18] Zack Friedman, *Student Loan Debt Statistics in 2020: A Record $1.6 Trillion*, Forbes (Feb. 3, 2020), https://www.forbes.com/sites/zackfriedman/2020/02/03/student-loan-debt-statistics/#3d6a9b45281f.

repay their loans.[19] It is therefore unsurprising that over 10% of borrowers default on their loans.[20] Even among borrowers who remain current on their payments, a 2019 survey found that student-debt holders spent 20% of their take-home pay on their student loans—reducing the amount they can save for retirement, a down payment on a home, unexpected medical expenses, to care for elderly relatives, and other expenses and emergencies.[21]

40. Moreover, students graduating in 2020 will struggle as they face an abysmal job market, whether or not they took out loans to fund their education. Due to the pandemic, students have already lost jobs on campus or in their college towns, as well as internships that help them build their resumes.[22] Now they are preparing to enter a workforce at a time when 22 million are filing for unemployment. The class of 2020 is graduating into the worst job market in a generation, and there is no telling how long it will take for the country to recover.[23]

41. Yet there has been no indication that the federal government or private lenders will forgive student loans simply because student borrowers saw their educations disrupted by the pandemic and will likely struggle to pay off their student loans. And it would be manifestly unjust for students like Mr. Hazel to shoulder this burden when they have not received the benefit of the bargain for which they took out those loans in the first place.

---

[19] Nigel Ohiwaya, *These five charts show how bad the student loan debt situation is*, NBC News (April 24, 2019), https://www.nbcnews.com/news/us-news/student-loan-statistics-2019-n997836; *see also* Abigail Hess, *Survey finds that student debt holders spend 20% of their take-home pay on loans*, CNBC (Aug. 8, 2019), https://www.cnbc.com/2019/08/08/student-debt-holders-spend-20percent-of-their-take-home-pay-on-loans.html.
[20] *Id.*
[21] Hess, *Survey finds that student debt holders spend 20% of their take-home pay on loans*, *supra* note 21.
[22] Alina Selyukh, *et al.*, *Graduating In a Pandemic: Advice for the Anxious Post-College Job Search*, NPR (April 16, 2020), https://www.npr.org/2020/04/16/831757428/graduating-in-a-pandemic-advice-for-the-anxious-post-college-job-search.
[23] *See, e.g.*, Megan Webber, *"It's not going very well:" The Class of 2020 searches for a job amid a pandemic that has crippled the economy*, The Denver Post (April 19, 2020), https://www.denverpost.com./2020/04/19/2020-college-graduates-job-search-colorado-coronavirus/.

### A. *Tuition*

42. JWU offers an in-person, hands-on curriculum. Mr. Hazel and the putative class members paid for in-person classes and to otherwise receive an all-encompassing "life on-campus" experience.

43. Thus, Mr. Hazel and class members paid JWU for, and JWU, in turn agreed to provide, services including:

   a. Face to face interaction with professors, mentors, and peers;
   b. Hands-on learning and experimentation;
   c. Networking and mentorship opportunities;
   d. Access to on-campus facilities such as computer labs, libraries, study rooms, and laboratories;
   e. Student government and student unions;
   f. Extra-curricular activities, groups, and intramurals; and
   g. Student culture, student development, and other similar activities.

44. Mr. Hazel and other class members paid tuition, the value of which has now been severely diminished, for the Spring 2020 Term.

45. Tuition at JWU for the 2019-20 academic year for a full-time undergraduate student is $33,054.00,[24] which is $132,216.00 for four years. A four-year degree program with a B.S. in culinary arts is 122 credits.[25] This equates to a course load of 30.5 credit hours per year and an average of 10.166 credit hours per term.[26] The annual tuition is broken down to $11,018.00, per each of the three terms, which equates to $1,083.74 per credit hour. By contrast, JWU only charges

---

[24] Tuition & Fees, JWU, available at https://web.archive.org/web/20190115201615/https://www.jwu.edu/admissions/paying-for-college/tuition-and-fees.html  (last accessed May 29, 2020).
[25] Culinary Arts - B.S., available at https://catalog.jwu.edu/programsofstudy/food-innovation-technology/culinary-arts-bs/miami/ (last accessed May 29, 2020).
[26] Johnson & Wales operates on trimesters, with a Fall, Winter, and Spring term covered in the base tuition.

$330.00 per credit hour for all of its College of Online Education undergraduate programs.[27] This represents a difference of $753.74 more per credit hour.

46. Moreover, students enrolled in culinary labs during the Spring 2020 Term were completely deprived of the benefit of the bargain as the labs were incapable of remote instruction.[28]

47. As the research indicates, students who are forced to attend classes online, rather than in person, are unlikely to receive the same quality of education and experience as they would from online instruction. This has been borne out in Mr. Hazel's personal experience.

48. For example, Mr. Hazel has found the lack of first-hand access to his instructors and advisors difficult as they are less accessible remotely than they were when he was on campus. Classes have been canceled or shortened due to technical glitches. Rather than traditional lectures, Mr. Hazel's experience has been that professors have given out assignments and then largely been absent.

49. Additionally, critical hands-on instructional experiences and interactions that complement pure lecture time have not been replaced with similarly complimentary remote learning tools.

   **B. *Students Are Experiencing Significant Losses, in Many Cases of Borrowed Funds as a Result of Defendant's Conduct***

50. At JWU, most undergraduate students utilize federal student loans to help pay for their college education:

  a. Providence Campus: 72% of students utilize federal loans averaging $7,376.00 per year;[29]

---

[27] Tuition & Fees, JWU, available at https://web.archive.org/web/20190115201615/https://www.jwu.edu/admissions/paying-for-college/tuition-and-fees.html (last accessed May 29, 2020).

[28] North Miami Campus-Culinary Labs to Resume July 6, A Message from Bruce Ozga, M. Ed. '92, Dean Culinary Education, available at https://covid.jwu.edu/nmi-news/north-miami-campus-culinary-labs-to-resume-july-6 (last accessed May 29, 2020).

[29] https://www.collegefactual.com/colleges/johnson-and-wales-university-providence/paying-for-college/student-loan-debt/#secUndergrad (last accessed May 28, 2020).

  b. North Miami Campus: 79% of students utilize federal loans averaging $8,160.00 per year;[30]

  c. Charlotte Campus: 85% of students utilize federal loans averaging $8,040.00 per year;[31] and

  d. Denver Campus: 75% of students utilize federal loans averaging $7,731.00 per year.[32]

51. JWU is, in effect, forcing its students to give it an interest-free loan using money that students could use for housing, meals, and other essential living expenses. Many of those students must pay interest to the federal government or private lenders on student loans.

52. With the academic instruction entirely online, Mr. Hazel and class members were deprived of the benefits of on-campus learning as set forth above. Yet, JWU has refused to refund any portion of the tuition, which is not worth as much as Mr. Hazel and class members paid under the assumption of an on-campus experience.

53. JWU has thus retained the value of the monies paid by Mr. Hazel and the other class members for tuition for the Spring 2020 Term, while failing to provide the services for which those monies were paid.

54. Through this lawsuit, Mr. Hazel seeks for himself and the other class members a

---

[30] https://www.collegefactual.com/search/?cx=003938256104927586508%3Aifej5syvsws&amp;ie=UTF-8&sa=Search&cof=FORID%3A10&siteurl=&q=johnson%20and%20wales%20north%20miami (last accessed May 28, 2020).

[31] https://www.collegefactual.com/search/?cx=003938256104927586508%3Aifej5syvsws&amp;ie=UTF-8&sa=Search&cof=FORID%3A10&siteurl=&q=johnson%20and%20wales%20student%20debt (last accessed May 28, 2020).

[32] https://www.collegefactual.com/search/?cx=003938256104927586508%3Aifej5syvsws&amp;ie=UTF-8&sa=Search&cof=FORID%3A10&siteurl=&q=johnson%20and%20wales%20student%20debt (last accessed May 28, 2020).

pro-rated tuition reimbursement to compensate for the diminished value of remote instruction and the portions of the tuition attributable to access on-campus facilities and extra-curricular activities of which students are no longer receiving the benefit. Mr. Hazel seeks return of those amounts on behalf of himself and the class members, as defined below.

## CLASS ACTION ALLEGATIONS

55. Mr. Hazel brings this action on behalf of himself and a proposed Rule 23(b)(3) nationwide class (the "Class") defined as follows:

> All students who paid, or other persons who paid on a student's behalf, tuition for on-campus programs at JWU for the Spring 2020 Term (the "Class").

56. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

57. Mr. Hazel reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

58. The Class meets the criteria for certification under Rule 23(a), (b)(3), and (c)(4).

59. **Numerosity.** The members of the Classes are so numerous that individual joinder of all class members is impracticable. Although the exact number of members of the Class is unknown to Mr. Hazel at this time and can be ascertained only through appropriate discovery, there were 10,463 students enrolled at JWU's four campuses at the beginning of the 2019-20 academic year.[33] Thus, there are likely thousands of class members.

60. **Commonality and Predominance.** This action involves common questions of law and fact that will drive the litigation and predominate over any questions affecting only individual class members. Common questions include, but are not limited to:

---

[33] University Fact Sheet, Accessible act https://www.jwu.edu/files/pdfs/www2/JWUFactSheetUniv.pdf, (last accessed May 29, 2020).

  a.  Whether Defendant engaged in the conduct alleged herein;

  b.  Whether Defendant breached its contracts with Mr. Hazel and other class members by not refunding them a pro-rated amount of their tuition on account of the closure of Defendant's campuses in the Spring 2020 Term;

  c.  Whether Defendant was unjustly enriched by not refunding Mr. Hazel and other class members a pro-rated amount of their tuition to account for the difference in value between online and in-person education;

  d.  Whether certification of the Class is appropriate under Rule 23; and

  e.  The amount of damages incurred by Mr. Hazel and the class members.

61. **Typicality.** Mr. Hazel's claims are typical of those of the other class members because Mr. Hazel and class members each paid tuition for the Spring 2020 Term at JWU but were not provided the services that the tuition was meant to cover. Mr. Hazel and other class members suffered damages–the loss of their tuition– as a direct and proximate result of the wrongful conduct in which Defendant engaged. Mr. Hazel's claims arise from the same practices and course of conduct that gives rise to the other class members' claims.

62. **Adequacy.** Mr. Hazel is an adequate representative of the Class because his interests are aligned, and do not conflict, with the interests of the other class members. Mr. Hazel has retained counsel who are experienced and competent in complex class action litigation, including consumer contract litigation. Mr. Hazel and his counsel intend to vigorously prosecute this action for the benefit of the Class as a whole. Class members' interests will be fairly and adequately protected by Mr. Hazel and his counsel.

63. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Mr. Hazel and the other class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for class members to individually seek redress for Defendant's wrongful conduct. Even if class

members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I

### Breach of Contract

64. Mr. Hazel and the class members repeat and allege the allegations in paragraphs 1 through 63 above, as if fully alleged herein.

65. Mr. Hazel brings this claim individually and on behalf of the other members of the Class.

66. Mr. Hazel and other class members entered into contracts with JWU, which provided that Mr. Hazel and other class members would pay monies, and in exchange, Defendant would provide on-campus, face-to-face academic instruction, along with a host of other educational services and extracurricular activities.

67. Mr. Hazel and other class members fulfilled their end of the bargain when they paid the monies due and owing for the Spring 2020 Term. Defendant did not. Specifically, Defendant failed to provide the agreed-upon on-campus classes and services for which the tuition was paid for the entire Spring 2020 Term. Accordingly, Defendant breached its contract(s) with Mr. Hazel and other class members, entitling Mr. Hazel and class members to reimbursement of the monies paid for the unused days of on-campus classes and services not received.

68. Defendant retained monies paid by Mr. Hazel and other class members for the Spring 2020 Term for on-campus classes and other services for which the tuition was paid without providing them the benefit of their bargain.

69. Defendant's performance under the contracts are not excused because of the COVID-19 pandemic: the relevant contracts provide no such terms excusing performance given

nationwide pandemics. Thus, Defendant should have given a refund for the diminution in value of the education received for online classes.

70. Mr. Hazel and other class members performed their end of the contract by paying tuition for the Spring 2020 Term.

71. As a result of Defendant's breach of contract, Mr. Hazel and the other class members were damaged financially in that they have been deprived of the benefit of their bargain, as described herein and in amounts to be proven at trial.

## COUNT II

### Unjust Enrichment

### (In the Alternative)

72. Mr. Hazel and class members repeat and allege the allegations in paragraphs 1 through 63 above, as if fully alleged herein.

73. Mr. Hazel brings this claim individually and on behalf of the other members of the Class and in the alternative to the breach of contract claim brought on behalf of the Mr. Hazel and the other members of the Class.

74. Mr. Hazel and other class members conferred substantial monetary benefits on JWU by paying their tuition for the Spring 2020 Term.

75. JWU has accepted and retained those benefits at the expense of Mr. Hazel and other class members, knowing that it was not providing the services for which such payments were made. The tuition benefits were diminished when students were forced to switch exclusively to online classes.

76. JWU has been unjustly enriched by retaining the monies paid by Mr. Hazel and other class members for the Spring 2020 Term for services not provided or diminished by the campus closure. Equity requires Defendant return pro-rated amounts for tuition paid by Mr. Hazel and other class members as described herein and to be proven at trial.

### REQUEST FOR RELIEF

Plaintiff, on behalf of himself and all other similarly situated, requests that the Court enter

judgment as follows:

    a.    For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

    b.    Declaring Defendant's policies of failing to pay refunds to Plaintiff and each class member to be in breach of its contract with students;

    c.    For himself and each class member, his or her actual compensatory damages in an amount to be proven at trial;

    d.    Equitable disgorgement and restitution, in an amount to be proven at trial;

    e.    For reasonable attorneys' fees and costs of suit;

    f.    For pre-judgment interest; and

    g.    Such further and other relief the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all claims and issues so triable.

DATED: May 31, 2020.

*/s/ Jeff Ostrow*
Jeff Ostrow FBN 121452
Jonathan M. Streisfeld FBN 117447
Joshua R. Levine FBN 91807
Kristen Lake Cardoso FBN 44401
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email: ostrow@kolawyers.com
streisfeld@kolawyers.com
levine@kolawyers.com
cardoso@kolawyers.com

Hassan A. Zavareei (*pro hac vice* to be filed)
Jennifer Thelusma FBN 1019776
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
jthelusma@tzlegal.com

Neil Swartzberg (*pro hac vice* to be filed)
**PEARSON, SIMON & WARSHAW, LLP**
350 Sansome St., Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
Email: dwarshaw@pswlaw.com

*Counsel for Plaintiff and the Proposed Class*